Ms. Wittgen. Good morning, Your Honors. May it please the Court, Nadine Wittgen, Assistant Attorney General, on behalf of Defendants Appellants Seth Wessel and George Lay. Wessel and Lay are here today to ask this Court to grant them a new trial on the substantive due process claims that Earl Davis brought against them, based on the fact that the jury was erroneously instructed on the standard of liability for the claim that he brought. Moreover, the District Court abused its discretion by not giving the court order instruction, and these errors in the instructions caused them prejudice. Did you ever propose a jury instruction that incorporated a recklessness requirement for any instruction based on the due process clause? The due process standard, I should say. The instructions that were proposed by Wessel and Lay included the malicious and sadistic standard, because that was the standard that was believed to govern such claims at the time. And while it's still not clear, because the Supreme Court in this Court has not articulated what standard would apply to these kinds of claims, after the trial, and in fact after the appeal was taken in this case, this Court issued the decision in Kingsley that indicated at least recklessness would be required in a jury instruction. And throughout the time that we were debating what the instruction should be, the defendants were always clear that some kind of mens rea was required in order to satisfy the standard of due process. Well, the Kingsley case was not a person who was detained under this civil commitment type of program. Correct. That was a pre-trial detainee, and that's kind of part of... On a criminal charge. What's that? On a criminal charge. On a criminal charge. And that's part of the problem with these types of cases. The Supreme Court in this Court has not indicated detained under the Sexually Violent Persons Act. But would you agree that civil detainees cannot be subjected to punishment, and therefore the Eighth Amendment, which allows punishment that is not cruel or unusual, wouldn't provide sufficient protection for that class of persons. Under the Youngberg case and Bell, the Court indicated that those who are civilly confined cannot be punished because the purpose of their detention is to detain them, not to punish. However, in this Court's decision in Thielmann, the Court indicated that those who are held because of sexual dangerousness might have more of an incentive to escape, and they've been found to be dangerous to society. So unlike a civilly committed mental patient who does not have these sexual tendencies, I think that goes into... So what is it you want as a standard, say, subject? What precisely? Well, I think we would initially ask for the malicious and specific standard. Yeah, what do you mean by recklessness? Well, criminal recklessness, so that there's an intent to harm, knowing that this action would cause the risk of harm. That's not recklessness, intent to harm. I'm sorry? You don't need intent to harm for recklessness. You tell me what you'd want in an instruction on recklessness. You have to tell the jury what recklessness is. As we explained in our reply brief, a recklessness means that a defendant fails to avert a known or obvious risk that was seriously and eminently avoidable. So some kind of indication... Okay, so that's what you want. That's a standard definition. Yeah. Do you think we should consider a civil detainee as more analogous to pretrial detainees or to prisoners? Well, I think it depends. As I was indicating, those who are held perhaps in a more traditional mental institution might have a different standard than those who are held pursuant to the Sexually Violent Persons Act, because these individuals have... Is he being held because he's dangerous to himself or to others or both? To others. They have to be shown to have this tendency to want to commit sexual acts upon others, and that detention is reviewed. Why is it civil rather than criminal? I don't understand. These statutes have been set up often to allow the detention of these individuals after their criminal sentence has expired. I know, but I don't understand why. Why don't you have a statute that says that the length of which is suited to how long he's likely to be dangerous? That's a decision that the legislatures across the country have made to enact these civil statutes. Isn't there a mental disease or defect component of this as well, that they have to be suffering from some mental disease? A mental deficiency and related to sexual tendencies. And having just served a sentence for a violent sexual offense or something like that. Correct. So bottom line here, no injury instruction was submitted with such a recklessness standard, or any other standards short of the Eighth Amendment standard, right? Well, the standard that was given, yes, allowed a finding against Wessel and Ley without any determination that they acted with any level of subjective intent. The instruction was stated in the disjunctive and allowed them to find liability for any one of three reasons, two of which clearly had no obvious requirement that intent be found. But there was no recklessness standard. Right. Yes, exactly. Or any kind of subjective intent standard. And that coupled with the fact that the district court denied our request for an instruction that a violation of a court order does not violate the due process. Was it argued by plaintiffs that the court order violation was a constitutional violation? It was not stated that explicitly, but during closing arguments, counsel said simply not removing the restraints in violation of a court order judges their reasonableness. And just prior to that had informed the jury that under the first element, if they found their conduct to be unreasonable, they can impose liability. So it was a strong suggestion that simply violating the court order had some kind of constitutional significance. And there was the instruction that violating a facility directive could not be a due process violation. So the fact that the jury was instructed about that, but not the court order, likely would have caused confusion, especially in light of these statements during closing argument. And that prejudice resulted, I think, is strongly suggested by the record here because the jury imposed no punitive damages. And the punitive damage instruction did include a statement that punitive damages could be imposed if the actions were malicious and sadistic or reckless. So that suggests that the jury probably found liability based on one of the other two standards that didn't include any subjective intent requirement. In the alternative, we ask that the court consider granting judgment as a matter of law, either on the merits or on the basis of qualified immunity. There was plenty of evidence here to overcome any indication that Wessel and Lay acted with a subjective intent high enough to impose liability. Why do you say subjective intent? Oh, pardon me. What do you think intent is? I say that because the standard hasn't been determined. And while we have urged malicious is subjective. So you don't have to say subjective intent. Sorry, yes, intent. Mr. Wessel was in a high security facility. He had found to be dangerous and that's why he was being detained. He had recently been found guilty of major rule violations. So he was required to wear black box handcuffs while he was outside the facility. That coupled with the fact that he was outside the a secure facility under the facility's directives. And that the purpose of handcuffing these detainees while they're outside the facility is to prevent escape and access to contraband. And there was also the courtroom demonstration that showed that it was entirely possible for a detainee who was handcuffed, even with the black box handcuffs, to use the restroom. I will reserve the rest of my time. Okay. Thank you. Thank you, Mr. Chairman. Mr. Campbell. Good morning, your honors, and may it please the court. My name is Daniel Campbell, and I represent the appellee, Mr. Earl Sidney Davis, in this case. The appellants, as they just argued yet again, are asking this court to reverse. Yeah, but the instructions are no good because the instruction allows the plaintiff to prevail by showing that the bodily restraint was excessive in relation to those purposes, namely legitimate security purposes. That could just be negligence. Your honor, that's the standard in restraint cases. I don't care what it is. That's negligence. That's not recklessness. It doesn't have to be recklessness in the civil detainee restraint claim context. As the Supreme Court in Youngberg pointed out, and this court utilized in May v. Sheehan, that's the reasonableness standard that's applied in restraint claims for civil detainees. I'm not talking about reasonableness. That's another one of the instructions. That's an alternative. That's better. But to say excessive in relation to those purposes is to say they were careless or maybe they just made a mistake. Your honor, in interpreting the Youngberg decision, the May court provided both alternatives as an the general principles of liability for these government actors. It goes back to the separate categories that the courts have defined. Civil detainees are more like free persons who, in a pre-arrest situation, we give an entirely objective standard. That's what Youngberg said and that's what May interpreted. Objective is not the issue. The issue is whether simply having made a mistake and restrained a person, the handcuffs were too small or something like that, or they had a scratch on them that irritated the skin. I don't think that's enough for federal liability here. Your honor, that wasn't the only mistake, if you will. No, no, but that's what the instruction permits the jury. Even if they found it was just a mistake, an accident, a pure accident, they're still allowed to render a verdict for the plaintiff. Not if there was a mistake or accident, your honor, but if they were not reasonably related. No, but look at the language. Excessive in relation to those purposes. That can just be a simple mistake. But that's the standard in these cases. But that can't be correct. Your honor, our contention is that's the standard, and even if it's not correct in this case, the facts of this case show that Wesleyn Lay's actions were so inherently degrading that even if the standard was... But you have to have proper instructions. I understand that, your honor, but they also have to show prejudice. And this court doesn't remand a case or waste judicial resources if the result... With respect to the punitive damage verdict here, it troubles me. It seems to me that the defense has shown prejudice because if what you say is correct, there should have been a punitive damage award as well. Your honor, there's a couple problems with that argument. One is punitive damages are such a different animal. We're really asking the jury to punish in addition to a compensatory finding, sort of extra conduct as sort of a deterrence factor. And that would also assume the fact that any time intent is shown in one of these cases, that punitive damages should follow. I don't think that's the case. It's incredibly difficult to get a panel, a jury member to say this conduct violated the constitution, which they found in this case, and then to say you should also punish them even further for that and award punitive damages. Those two don't necessarily follow, and they're certainly unrelated to the liability standard in this case. The facts of this case are so inherently degrading that even if a recklessness standard was given, Mr. Davis still would have prevailed. The facts show, and Wessel and Lay did not- But wasn't recklessness part of the punitive damage instruction? It was. And the jury found no recklessness by adversely finding on the punitive damage award? That's one reading, your honor. I don't think that's correct. They also could have found intent based on the instruction that was given. The third prong of the instruction is also overlooked, which is clearly an intent-driven instruction. And it really matches the facts the best. Because what Wessel- Sure. If that had been it, but it was in the alternative, or- That's correct, your honor. But what the district court did is she tracked the language of Mae V. Sheehan, which is the unreasonable restraint claim case that this circuit has utilized, citing Youngberg. That's the standard pronounced. That wasn't- I would be a lot more comfortable with unreasonable than I would with excessive. And your honor, unreasonable is the standard that the Mae court was interpreting. They were saying- I'm just concerned with your instructions. And your honor, even if the instruction- Very bad instructions. Even if the instruction was wrong, the jury and the district court still got it right. Well, but there's Judge Tinder's point about the fact that they didn't seem not to have found that there was reckless conduct. Your honor, the facts show that that is a product of the difference between what a punitive damage award means. In this case, the defendants did not controvert Mr. Davis's testimony as to what happened on May 22nd, 2008. They couldn't recall if they were there that day or not. So you're entitled to summary judgment or what? Well, we were already at the trial at this point, your honor. We're entitled to- You're entitled, but you have no instructions, effectively. They cannot show prejudice- You don't have correct instructions. Imagine a case that was tried and there were no instructions. Would you come up and say, well, there were no instructions, but look, it's obvious what a reasonable jury would do. Your honor, if this court finds that the jury instructions were incorrect, you can still Mr. Davis because under any standard, even the malicious and sadistic one that Wessel and Lay proposed, these facts still meet that muster. These defendants didn't controvert the fact that they were half his age and twice his size, in a bathroom with one entrance and one exit, when they had already checked him for contraband, assured the judge that they would remove the restraints. What you're saying is that if the jury had found in favor of the defendants on everything, not just the punitive damages, you would not only have appealed and gotten us to upset the jury to, um, to order judgment for the plaintiffs. Under this set of facts, yes, because they were undisputed trial. That's very unusual. I don't think I've ever seen that. Your honor, this is an unusual case. I mean, you can reverse, pardon? What happened in this case and what happened- You want a directed verdict at the end of the trial, right? What happened in this case and what happened to Mr. Davis was truly degrading. And it was uncontroverted at trial. You're missing the point. You think that if the case is strong enough, you don't need jury instructions. In fact, you don't need a jury because if the jury doesn't render a verdict for the plaintiff, you're going to ask us to direct the judge to, you know- Your honor, we believe the instructions in this case were correct. No, they weren't. Not the instruction about the excessive, excessive restraint, because that could easily be the result of an accident. The jury could have thought these police, you know, these guards, they were wrong. And maybe they didn't believe the stuff about the laughter, though. And they'd say, yeah, these, these, they were wrong. They used excessive force. But, you know, it was a mistake. And they're afraid of this guy. He's got a bad record. So that's what they- But, your honor, the jury could have equally found under the other two prongs of the instruction. They could have what? They could have easily found under one of the other two prongs of the instruction. But we don't know, right? If you give it, if you give a mess of instructions, if they find this, that, or the other thing, you don't know which, which instruction the jury followed. We don't. But looking at the facts, the facts most- No, you don't get the point. You're saying you can have a, you can uphold a judgment without any instructions at all. If it, if it's, if you really think the jury could only have found one way, even though they were incorrectly instructed, still you can uphold their verdict. I don't think that, your honor. It's just that in this case, if the court finds that the jury instructions were erroneous, it can still find that Mr. Davis would have prevailed under a stricter statute. And what do we do with the next case? Your honor, this would be a fine opportunity to clarify what those instructions should be. So we'd say the instructions were incorrect. But we're going to give it to you. You see, that's the problem. Your honor, this court- We have to look ahead. You're absolutely, I understand your concern, your honor, and I see my time is up. I'll just conclude by saying that this court is allowed to fine for a party and not remand the case if they find that even under a more exacting standard, or if the jury was instructed correctly, that Mr. Davis would have still prevailed. Okay. Well, thank you very much, Mr. Campbell. Ms. Wichert, do you have anything further? Yes, your honor, just a couple of points. First, on the punitive damages. The fact that none were awarded is evidence that suggests what the jury was thinking. But also, the case that we cite in our reply brief, the Rainwater case that came from the same court as this, that jury was instructed under the recklessness standard after Kingsley was decided, and that jury found in favor of the defendant. So that suggests that if properly instructed, the jury might have come to a different conclusion. Well, every case stands on its facts. No, I understand. But it is evidence that with the proper standard, the jury could apply the facts to that standard. And as Judge Posner suggested, the instructions here invited the jury to substitute its judgment on security matters for Wessel and Lay, which the Supreme Court has indicated is improper. We ask that you grant a new trial or reverse the judgment outright. Thank you. Okay. Thank you very much. So our next case.